UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROY LEE MAXWELL,<br><br>　　　　　Petitioner,<br><br>　v.<br><br>ANDREW SAUL,[1] Commissioner of Social Security,<br><br>　　　　　Respondent. | No. 1:18-cv-00894-GSA<br><br>**ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF COMMISSIONER OF SOCIAL SECURITY AND AGAINST PLAINTIFF** |

**I.**　**Introduction**

Plaintiff Roy Lee Maxwell ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability insurance benefits pursuant to Title II of the Social Security Act. The matter is currently before the Court on the parties' briefs which were submitted without oral argument to the Honorable Gary S. Austin, United States Magistrate Judge.[2] *See* Docs. 11, 14 and 15. Having reviewed the record as a whole, the Court finds that the ALJ's decision is supported by substantial evidence and applicable law. Accordingly, Plaintiff's appeal is denied.

---

[1] Commissioner of Social Security Andrew Saul is substituted as Defendant pursuant to Fed. R. Civ. P. 25(d). *See also* Section 205(g) of the Social Security Act, 42 USC 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

[2] The parties consented to the jurisdiction of the United States Magistrate Judge. *See* Docs. 5 and 6.

1

## II. Procedural Background

On June 25, 2014, Plaintiff filed an application for disability insurance benefits pursuant to Title II alleging disability beginning January 10, 2014. AR 41. The Commissioner denied the application initially on October 30, 2014, and upon reconsideration on March 13, 2015. AR 41. On May 11, 2015, Plaintiff filed a timely request for a hearing before an Administrative Law Judge. AR 41.

Administrative Law Judge Lisa Lunsford presided over an administrative hearing on March 28, 2017. AR 54-91. Plaintiff appeared and was represented by an attorney. AR 54. Impartial vocational expert Gretchen Bakkenson (the "VE") also testified. AR 54.

On May 9, 2017, the ALJ denied Plaintiff's application. AR 41-49. The Appeals Council denied review on May 1, 2018. AR 1-3. On June 29, 2018, Plaintiff filed a complaint in this Court. Doc. 1.

## III. Factual Background[3]

Plaintiff (born August 26, 1954) worked for Chevron for forty years, ending his career there as a safety supervisor in the health and human services group. AR 60, 64, 106. Managing safety of "people, processes, and equipment," Plaintiff initiated safety programs, conducted field operations, attended meetings and training, trained various people within the company and managed approximately 300 employees. AR 65. Plaintiff completed two years of college and extensive technical training relevant to his career. AR 66-67.

In 2010, Plaintiff's fiancée Joanne was brutally assaulted and mutilated by her mentally ill adult son. AR 70, 73, 74. In the course of the assault, Joanne attempted to call Plaintiff for help. AR 71. Although Plaintiff was only minutes away he was busy at work and did not answer his phone. AR 70-71. Joanne survived in a coma for two years before her other children elected to withdraw life support. AR 72. Plaintiff felt great guilt for his failure to save his fiancée. AR 70-71. Various related occurrences resulted in additional emotional trauma.

///

---

[3] The factual background is derived from Plaintiff's testimony at the administrative hearing. Because Plaintiff's only contention on appeal is whether the vocational expert's testimony conflicted with the provisions of the Dictionary of Occupational Titles, this decision does not include an extensive factual analysis.

Plaintiff began experiencing short blackouts after the assault. AR 74. More often he experienced panic attacks with symptoms such as dizziness, lightheadedness, stomach and joint pain, shortness of breath, high blood pressure and excessive sweating. AR 75-78. He experienced violent nightmares. AR 77. His work suffered. AR 75. While flying to Oregon on January 10, 2014, Plaintiff lost consciousness and stopped breathing. AR 68-69. He stopped working thereafter. AR 69. Doctors attribute his anxiety and panic attacks to post traumatic stress syndrome (PTSD). AR 67.

### IV. Standard of Review

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted). When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and internal quotation marks omitted).

If the evidence reasonably could support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

///

///

## V. The Disability Standard

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform his past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. 20 C.F.R. § 416.920(a)-(f).

## VI. Summary of the ALJ's Decision

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of January 10, 2014. AR 43. His severe impairments included posttraumatic stress disorder (PTSD), generalized anxiety disorder/panic disorder, mood disorder NOS, obsessive compulsive personality traits, lumbar and thoracic degenerative disc disease, hypertension and obesity. AR 43. None of the severe impairments met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d); 404.1525; and, 404.1526). AR 44.

The ALJ concluded that Plaintiff had the residual functional capacity to perform medium work with the following limitations: never climb ladders, ropes or scaffolds; no exposure to hazards such as unprotected heights or moving machinery; and, perform no more than simple tasks. AR 45. Plaintiff would be off task five per cent of the workday. AR 45.

Plaintiff was not able to perform any past relevant work; however, jobs that Plaintiff could perform existed in significant numbers in the national economy. AR 48. Accordingly, the ALJ found that Plaintiff was not disabled from January 10, 2014, through May 9, 2017 (the date of the hearing decision). AR 49.

### VII. The ALJ's Reliance on Vocational Expert Testimony Generally Complied with Applicable Law

Plaintiff contends that his residual functional capacity precludes performance of the alternative jobs identified by the ALJ at step five. Doc.11 at 5-9. The Commissioner disagrees, contending that the ALJ properly relied on the opinion of the vocational expert. Doc. 14 at 4-10. The difference in the parties' positions requires the Court evaluate whether Plaintiff could perform the positions identified as available to him in the national economy.

#### A. Background: the ALJ's Questioning of the Vocational Expert

The vocational expert identified Plaintiff's past work as safety engineer (DOT No. 010.061-014, light, SVP 8). AR 86. She testified that Plaintiff's past work could not be performed by a hypothetical person with the same age, education and work experience as Plaintiff. AR 86-87. Specifically, the hypothetical person was limited to medium work; could never climb ladders, ropes or scaffolds; could have no exposure to hazards such as moving machinery or heights; was limited to simple tasks; and, would be off task five percent of the time. AR 86-87. However, the hypothetical person could perform other work, including (1) dishwasher[4] (DOT No. 318.687-010, medium, SVP 2, 279,000 available jobs); (2) laundry worker (DOT No. 361.684-014, medium, SVP 2, 74,000 available jobs); and, (3) order picker (warehouse person)[5] (DOT No. 922.687-058, medium, SVP 2, 50,000 available jobs). AR 87. In

---

[4] The occupational title of this DOT number is "kitchen helper." DICOT 318.687-010, 1991 WL 672755 (January 1, 2016).

[5] Order picker is an alternate title. The occupational description is entitled "Laborer, Stores." DICOT 922.687-058, 1991 WL 688152 (January 1, 2016).

1 response to the ALJ's inquiry, the vocational expert confirmed that her testimony was consistent
2 with the DOT. AR 87.

### B. <u>Legal Standard</u>

In determining whether appropriate jobs exist for the claimant, the ALJ generally will refer to the DOT, which sets forth "detailed physical requirements for a variety of jobs." *Light v. Social Sec. Admin.*, 119 F.3d 789, 793 (9th Cir. 1997). An ALJ must take judicial notice of reliable job information available from various governmental and other publications, including the DOT. 20 C.F.R. § 416.966(d); SSR 00-4p at *2. The DOT (including its companion publication the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (SCO) is the primary source of "information about the requirements of work in the national economy." SSR 00-4p at *2. In addition, the agency may use the services of a vocational expert or other specialist to assist in determining a complex issue, such as whether a claimant's job skills can be used in a specific occupation. 20 C.F.R. § 416.966(e); SSR 00-4p at *2.

Social Security Ruling 00-4p is intended, among other things, to clarify standards for the use of vocational experts in administrative hearings. SSR 00-4p at *1. The ruling emphasizes that before relying on a vocational expert's testimony to support a disability determination or decision, an ALJ must: "Identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs … and [e]xplain in the determination or decision how any conflict that has been identified has been resolved." *Id.*

By identifying the DOT as the primary source of information, the ruling contemplates that the ALJ will be familiar (or will familiarize herself) with the provisions of the DOT applicable to the claim being considered. SSR 00-4p at *2. Vocational experts are intended to assist in resolving complex questions, generally by testifying at administrative hearings. *Id.*

Vocational expert testimony should generally be consistent with DOT provisions. *Id.* The ALJ may rely on vocational expert testimony that contradicts the DOT but only insofar as the record contains persuasive evidence to support the deviation. *Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007). "Neither the DOT nor the VE . . . evidence automatically 'trumps' when

there is a conflict." SSR 00-4p at *2. As a result, the ruling requires the ALJ to first determine whether a conflict exists, and if it does, to determine whether the vocational expert's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the DOT. *Id.* at *2-3.

The ruling imposes "an affirmative responsibility" to ask about any conflict between the vocational expert's testimony and information provided in the DOT. SSR 00-4p at *4. The ALJ must:

> Ask the VE . . . if the evidence he or she has provided conflicts with information provided in the DOT; and
>
> If the VE's . . . evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

SSR 00-4p at *4.

An ALJ can only properly rely on testimony inconsistent with the DOT after he or she has determined both whether the VE has deviated from the DOT and whether any deviation is reasonable. *Massachi*, 486 F.3d at 1152-54. Reasonable deviations may include occupations for which the DOT does not provide information but for which information is available elsewhere and occupations for which the general information in the DOT does not apply in the specific situation. *Id.* at 1153 n. 17. Evidence sufficient to support a deviation from the DOT may consist either of specific findings of fact regarding a plaintiff's ability to perform particular jobs or of inferences drawn from the context of the expert's testimony. *See Johnson v. Shalala*, 60 F.3d 1428, 1435 n. 7 (9th Cir. 1995) (ALJ provided sufficient support for deviation by noting that the VE described characteristics and requirements of jobs in the local area consistent with claimant's residual functional capacity); *Terry v. Sullivan*, 903 F.2d 1273, 1279 (9th Cir. 1990) (ALJ may infer support for deviation where vocational expert's understanding of applicable legal standards is clear from context).

### C. **Deviations Alleged by Plaintiff**

Plaintiff contends that the ALJ erred in failing to probe inconsistencies between the hypothetical person's residual functional capacity and additional limitations, and the three

7

exemplary occupations that the vocational expert opined that the hypothetical person could perform. Plaintiff contends that two occupations, dishwasher and laundry worker present hazards precluded by the additional limitations and that the remaining occupation, order picker, required occasional climbing precluded by the limitations.

### 1. **Exposure to Hazards**

Plaintiff contends that both dishwashing and laundry work would exposure Plaintiff to wet or humid environmental conditions. In addition, dishwashing presents additional hazards of cold, heat, and loud noise. None of these additional hazards are precluded by Plaintiff's residual functional capacity, which explicitly provides only that Plaintiff should not be exposed to hazards such as unprotected heights or moving machinery. AR 45. Hazards of moving mechanical parts and high exposed places are not present in either occupation. *See* DICOT 318.687-010, 1991 WL 672755 (January 1, 2016); DICOT 361.684-014, 1991 WL 672983 (January 1, 2016). Accordingly, no inconsistency appears between Plaintiff's residual functional capacity and limitations and the vocational expert's testimony and the DOT.

### 2. **Climbing**

Order pickers (warehouse workers) are exposed to occasional climbing (exists up to one-third of the time). DICOT 922.687-058, 1991 WL 688132 (January 1, 2016). As noted above, the ALJ asked generally whether the VE's testimony was consistent with the DOT and received an affirmative response. The ALJ did not ask specifically about the apparent inconsistency between the DOT's specifications concerning climbing by an order picker.

The Ninth Circuit does not expect an ALJ to conduct an independent review of a DOT listing in order to determine whether he or she must question a vocational expert in detail about a potential conflict. "[N]ot all potential conflicts between an expert's job suitability recommendation and the *Dictionary's* listing of 'maximum requirements' for an occupation will be apparent or obvious … an ALJ need only follow up on those that are." *Gutierrez v. Colvin*, 844 F.3d 804, 807-08 (9th Cir. 2016). The decision explained:

> For a difference between an expert's testimony and the *Dictionary's* listings to be fairly characterized as a conflict, it must be obvious or apparent. This means that the testimony must be at odds with the

8

> *Dictionary's* listing of job requirements that are essential, integral, or expected. This is not to say that ALJs are free to disregard the *Dictionary's* definitions or take them with a grain of salt—they aren't. But tasks that aren't essential, integral or expected parts of a job are less likely to qualify as apparent conflicts that the ALJ must ask about. Likewise, where the job itself is a familiar one—like cashiering—less scrutiny by the ALJ is required.

*Gutierrez*, 844 F.3d at 808.

For example, although Mrs. Gutierrez had weight bearing and overhead reaching limitations of her right arm but full use of her left arm, the vocational expert opined that she could work as a cashier. *Id.* The DOT provides generally that cashiering involves frequent reaching. *Id.* "While 'reaching' connotes the ability to extend one's hands and arms 'in any direction,' SSR 85-15 . . . at *7 . . ., not every job that involves reaching requires the ability to reach overhead." *Id.* Although the DOT specifies that both cashier and stock clerk jobs require frequent reaching, the court contrasted the work performed by stock clerks who frequently reached overhead to stock shelves, with the reaching performed by a cashier, who almost never has to reach overhead. *Id.* Observing that the work of cashiers is commonly known, the court concluded that an ALJ has no obligation to ask specific questions where common experience indicates that the frequency or necessity of a task is unlikely and unforeseeable. *Id.* In such instances, an ALJ is entitled to rely on the expert's experience in job placement to account for the requirements of a particular job. *Id.* at 809.

The Ninth Circuit considered the *Gutierrez* holding in *Lamear v. Barryhill*, 865 F.3d 1201 (9th Cir. 2017). Mr. Lamear had back and neck problems that imposed no restrictions on his right hand and arm but limited him to being able only occasionally to handle, finger, or reach overhead with his left, non-dominant arm. *Id.* at 1203. The vocational expert opined that an individual with that limitation could not use a keyboard with his left hand but could still work as an office helper, mail clerk, or parking lot cashier. *Id.* All three exemplary jobs require frequent handling, fingering, and reaching. *Id.* The expert did not testify concerning how Lamear could perform the exemplary jobs given his left arm and hand limitations, and the ALJ did not ask the expert to reconcile any potential inconsistency between Lamear's manipulative limitations and the exemplary jobs. *Id.* at 1204.

9

The court distinguished Mr. Lamear's case from that of Mrs. Gutierrez, finding that common experience was not sufficient to conclude that an individual with limitations in handling, fingering and feeling could perform the job duties described in the DOT descriptions. *Id.* at 1205. In reaching its conclusion, the court noted that all three positions require *frequent* handling, fingering, and reaching, indicating that such activities could be performed for as much as two-thirds of the workday. *Id.* at 1206. In addition, the DOT descriptions included such general tasks for these jobs as "opening and sorting mail, stuffing envelopes, distributing paperwork, and counting change." *Id.* at 1205.

The Ninth Circuit has also applied *Gutierrez* in a series of unpublished cases which illustrate the fact-dependent nature of an ALJ's duty to inquire. *See Vargas v. Berryhill*, 735 Fed. Appx. 413 (9th Cir. 2018) (ALJ erred in failing to reconcile job as packager with claimants need to avoid moderate exposure to fumes, odors, dust, gas and poor ventilation); *Ruiz v. Berryhill*, 732 Fed. Appx. 592 (9th Cir. 2018) (no need to investigate and resolve conflict where claimant's limited English language abilities were not essential, integral of expected for the job of sewing machine operator); *Butt v. Berryhill*, 727 Fed. Appx. 913 (9th Cir. 2018) (no error where expert testified that claimant with limitation on overhead reaching using one arm could nonetheless perform prior work as preschool teacher); *Randazzo v. Berryhill*, 725 Fed. Appx. 446 (9th Cir. 2017) (ALJ erred in relying on expert testimony that a claimant with the residual functional capacity to perform low stress jobs requiring only occasional changes in the work setting or occasional decision making, could perform light work as a small parts assembler without inquiring whether the job of small parts assembler was fast paced or rapid assembly line work); *Towne v. Berryhill*, 717 Fed. Appx. 705 (9th Cir. 2017) (in the absence of obvious or apparent conflict, ALJ was entitled to rely of expert's specific testimony that claimant with the ability to perform a limited range of light work could perform the exemplary jobs); *Buckins v. Berryhill*, 706 Fed. Appx. 380 (9th Cir. 2017) (ALJ erred in not investigating expert's opinion that claimant with reaching restriction could perform jobs of housekeeping cleaner and ticket taker); *Rashidi v. Berryhill*, 703 Fed. Appx. 569 (9th Cir. 2017) (ALJ erred in failing to investigate apparent

///

10

discrepancy concerning ability of claimant limited to occasional fine and gross manipulation to work as sorter, stuffer, and polisher).

Order pickers fall within the occupational title of Laborer, Stores, of which Order Picker is an alternative job title. DICOT 922.6867-058, 1991 WL 688132 (January 1, 2016). The description includes many functions that require no climbing at all:

> Performs any combination of the following tasks to receive, store and distribute material, tools, equipment, and products within establishments: Reads production schedule, customer order, work order, shipping order, or requisition to determine items to be moved, gathered, or distributed. Conveys materials and items from receiving or production areas to storage or to other designated areas by hand, handtruck, or electric handtruck. Sorts and places materials or items on racks, shelves, or in bins according to predetermined sequence, such as size, type, color, or product code. Sorts and stores perishable goods in refrigerated rooms. Fills, requisitions, work orders, or requests for materials, tools, or other stock items and distributes items to production workers or assembly line. Assembles customer orders from stock and places orders on pallets or shelves, or conveys orders to packing station or shipping department. Marks materials with identifying information, using stencil, crayon, or other marking device. Opens bales, crates, and other containers, using hand tools. Records amounts of materials or items received or distributed. Weighs or counts items for distribution within plant to ensure conformance to company standards. Arranges stock parts in specified sequence for assembly by other workers. May use computer to enter records. May compile worksheets or tickets from customer specifications [ORDER DETAILER (clerical) 221.387-046]. May drive vehicle to transport stored items from warehouse to plant or to pick up items from several locations for shipment. May complete requisition forms to order supplies from other plant departments. May prepare parcels for mailing. May maintain inventory records. May restock aircraft commissary supplies, such as linens, glasses, emergency kits, and may be designated Commissary Agent (air trans.). May be known according to specific duty performed as Cloth-Bin Packer (textile); Cooler Worker (dairy products); Order Filler (any industry); Produce Clerk (retail trade) II; Tool Chaser (any industry).

DICOT 922.687-058, 1991 WL 688132 (January 1, 2016).

As was the case within *Gutierrez*, not every job within this title requires climbing of any kind. Depending on the industry, warehouses include those in which products are stored on shelves or in stacks reaching towards a high ceiling, and those in which the products to be picked for orders are within easy reach of a worker on the floor. Given the variety of functions within this category, the variety of warehouse configuration in which the jobs may be performed, and the

11

DOT description of climbing as" occasional," the Court is reluctant to conclude that climbing is an "essential, integral or expected parts of a job." *See Gutierrez*, 844 F.3d at 808.

### D. **Harmless Error**

Even if the ALJ erred in failing to question the vocational expert about the occasional climbing required by warehouse laborers, the error is harmless. A harmless error is one that is "inconsequential to the ultimate nondisability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006). Plaintiff's ability to perform the duties of dishwasher (279,000 available jobs) and laundry worker (74,000 available jobs) is sufficient to establish that Plaintiff can perform "work which exists in significant numbers either in the region in which [she] lives or in several regions of the country. 42 U.S.C. § 1382c(a)(3)(b).

### VIII. **Conclusion and Order**

Based on the foregoing, the Court finds that the ALJ's decision that Plaintiff is not disabled is supported by substantial evidence in the record as a whole and based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of Court is directed to enter judgment in favor of Defendant Andrew Saul, Commissioner of Social Security, and against Plaintiff Roy Lee Maxwell.

IT IS SO ORDERED.

Dated: **August 5, 2019**        **/s/ Gary S. Austin**
                                 UNITED STATES MAGISTRATE JUDGE